UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

STEPHEN J. ELLISON
ANITA L. ELLISON,

                              Plaintiffs,

                                                                      <u>DECISION AND ORDER</u>

                                                                            12-CV-6261L

       v.

ALLSTATE INDEMNITY COMPANY,

                              Defendant.
_____

       Plaintiffs Stephen and Anita Ellison (the "Ellisons") bring this action against Allstate Indemnity Company ("Allstate"), seeking coverage for water damage pursuant to a property insurance policy they had purchased from Allstate. Allstate now moves for summary judgment dismissing the complaint, on the grounds that its denial of coverage to the Ellisons for the underlying damages was justified by one or more applicable policy exclusions. (Dkt. #47). For the reasons discussed below, the motion is denied.

**FACTUAL AND PROCEDURAL BACKGROUND**

       In or about November 2011, the Ellisons purchased a homeowners insurance policy (the "Policy") from Allstate, effective November 16, 2011, to cover potential losses to their home, located at 223 Black Walnut Drive in Greece, New York.

       The Policy provided, in relevant part:

       We will cover sudden and accidental direct physical loss to property . . . except as limited or excluded in this policy . . .

> Losses We Do Not Cover Under Coverages A and B:
>
> We do not cover loss to property . . . consisting of or caused by . . . wear and tear, aging, marring scratching, deterioration, inherent vice, or latent defect . . . mechanical breakdown . . . rust or corrosion, mold, wet or dry rot . . . Seepage, meaning continuous or repeated seepage or leakage over a period of weeks, months, or years, of water, steam or fuel: (a) from a plumbing [system] . . ."

Dkt. #54-4 at 27 et seq.

On or about the afternoon of December 25, 2011, Anita Ellison discovered that the basement floor in the Ellison home was soaked with water, and that water appeared to be leaking down copper pipes extending from the first floor. In attempting to locate the source of the leak, the Ellisons discovered that the drywall under their kitchen sink was soaking wet, to the point that it disintegrated when touched. On December 26, 2011 the Ellisons notified Allstate of the leak. On or about December 30 or 31, 2011, plumber John Ritter located and replaced a cracked, uninsulated copper drain pipe, situated within the exterior wall behind the kitchen sink cabinet. On January 10, 2012, Allstate adjustor Edward Clifton ("Clifton") came to the premises to inspect the damage, and concluded that the pipe had split due to "wear and tear," and that discoloration, softening and deterioration of the building materials around the pipe suggested that the leak had begun before December 25, 2011. (Dkt. #47-2 at ¶14).

On January 13, 2012, Allstate issued a letter disclaiming coverage, on the grounds of the exclusions for wear and tear, mechanical breakdown, continuous or repeated seepage, and inadequate planning, design, materials or maintenance.

The Ellisons thereafter commenced the instant action, requesting compensatory and punitive damages totaling $1,500,000.00. (Dkt. #1-3). The Ellisons claim that Allstate breached the terms of the Policy and inappropriately relied on the exclusions, because the damage at issue was precipitated by the sudden and accidental freezing of the copper pipe, and not by any excluded cause.

## DISCUSSION

### I.  Summary Judgment

Summary judgment will be granted if the record demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In determining a motion for summary judgment, the

Court's role is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id*. When considering a motion for summary judgment, the Court must construe all inferences from underlying facts in the light most favorable to the non-movant. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986), *citing United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

**II.     Allstate's Reliance on the Policy Exclusions**

In support of its motion for summary judgment, Allstate claims that the Policy's exclusions are clear and unambiguous, and that the Ellisons cannot raise a question of fact concerning whether the water damage they discovered on December 25, 2011 was a recent, "sudden and accidental" loss, rather than the result of a long-preexisting "seepage" or some other condition excluded by the policy.

The parties' accounts and evidence conflict considerably with regard to the reason the copper pipe failed, and whether there was visual evidence of long-term, preexisting "seepage" from that pipe. Allstate adjustor Clifton found that deterioration, moisture and discoloration in the areas around the leak appeared to be far more than ten days' old when he inspected it approximately two weeks after the Ellisons' first reported it to Allstate. Commercial plumbing and heating contractor Clark Viele, who had performed work on a prior leak at the home in or before 2008, testified that there was wetness and damage visible in the kitchen sink cabinet at the time. Allstate expert Jonathan Solomon, President of Building Science Investigations, a firm that performs forensic investigations of buildings, opined based on his examination of photographs of the damage that the leak "clearly began prior to November 18, 2011," due to, among other things, "obvious signs of wood rot . . . multiple water staining patterns, relative condition of the mold growth, swollen/delaminated wooden members . . ." (Dkt. #47-2 at ¶22).

The Ellisons contend that there are, at the very least, material questions of fact as to whether the leak was a sudden and accidental event. Anita Ellison testified that although she did laundry in her basement, she did not discover the leak or ever observe water flowing down pipes in the basement and soaking the basement carpet until December 25, 2011. (Dkt. #54-6 at 9-16). Contractor Robert Sutherby performed the necessary tear out and repair around the leak in 2011, and prepared an estimate of the damage. He testified that he saw no pre-existing damage behind the walls when he opened them up, believed that the absence of obvious mold in the walls indicated that "[the leak] had just happened," and that based on his examination of the burst pipe, which was located in an exterior

wall and had cracked cleanly down the middle in the same manner as other frozen copper pipes he had encountered, the pipe had clearly burst from freezing. (Dkt. #54 at ¶¶ 61-64).

The Ellisons emphasize that although Allstate adjustor Clifton testified that he believed that the leak had begun prior to December 25, 2011, he also testified that he would have expected to see minor water staining and mold even if the leak had not begun until that date. He also admitted that he observed no "inherent vice," "latent defect," or "rust or corrosion" in the damaged area, and that he could not determine the age of the leak simply by examining the ruptured pipe. (Dkt. #54 at ¶¶ 43-46). Although Allstate relies on Viele's testimony concerning a prior leak at the home upon which he had done some work some three or more years prior to establish that there was ongoing "seepage" in or around the kitchen sink cabinet, that testimony related, by Viele's own admission, to "a different pipe" – a PVC pipe, which he replaced. (Dkt. #54 at ¶¶56-57). Viele notably did not testify that he'd observed any problems with the copper plumbing under the kitchen sink at that time, and to the extent that he observed localized wetness or warping, a reasonable finder of fact could conclude that any evidence of leaking that Viele observed in or before 2008 was attributable to the PVC pipe he'd been hired to replace, and not to long-term "seepage" from the copper pipe that would later be discovered to have sprung a leak some three or more years later. As such, Viele's testimony concerning the earlier leak could be interpreted to undermine rather than support Allstate's interpretation of the evidence, in that it presents an alternate explanation (besides long-term seepage from the copper pipe at issue) for the appearance of any discoloration or "old" staining of area around the kitchen sink in 2011.

Upon review of the evidence submitted, I find that summary judgment at this juncture would be inappropriate, because there remain several triable issues of material fact relative to whether the water damage at issue was caused by a pre-existing "seepage" or a "sudden and accidental" event, or some combination of the two (and if the latter, which because was predominant).

Assessment of these issues will involve a fact-intensive analysis of, among other things, the credibility of the fact witnesses and expert(s), as well as the photographs and observations upon which they relied. Moreover, I note that although Allstate argues that plaintiffs have not timely submitted an admissible expert report to contradict the opinion of Allstate's own expert, questions of fact concerning the appearance, extent and source of water

damage in the relevant areas persist, regardless of whether the report of plaintiffs' purported expert is considered. Resolution of such material questions of fact is for the jury: they may not be decided by the Court as a matter of law.

## CONCLUSION

For the foregoing reasons, Allstate's motion for summary judgment (Dkt. #47) is denied.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
      May 4, 2015.